IN THE UNITED STATES DISTRICT COURT
IN THE  WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 3:16-cv-00875-GCM

| | |
|---|---|
| HILDA BATES, AS ADMINISTRATOR OF THE ESTATE OF NEMAN T. BATES,<br><br>  Plaintiff,<br><br>v.<br><br>TIPPMANN SPORTS, LLC, DICK'S SPORTING GOODS, INC., AND GAYSTON CORPORATION,<br><br>  Defendants.<br><br>vs.<br><br>GAYSTON CORPORATION,<br><br>  Third-Party Plaintiff,<br><br>v.<br><br>BXD ENTERPRISES, INC.,<br><br>  Third-Party Defendant. | **BRIEF IN SUPPORT OF THIRD PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

NOW COMES Third-Party Defendant, BXD Enterprises, Inc. ("BXD"), by and through the undersigned counsel, and submits this Brief in Support of its Motion for Summary Judgment.

## NATURE OF THE MATTER BEFORE THE COURT

This action arises from the death of Neman T. Bates ("Mr. Bates"). On February 2, 2015, Mr. Bates was applying camouflage tape to the exterior of a $CO_2$ paintball cylinder in his home. While applying the tape, the $CO_2$ cylinder ruptured, which resulted in the death of Mr. Bates.

The $CO_2$ cylinder at issue is a 9 ounce cylinder. Screwed into the top of the cylinder is a pin valve assembly. Screwed into the side of the pin valve assembly is a burst disk assembly. The burst disk assembly consists of a single copper burst disk or membrane, which, if the pressure on the burst disk exceeds its tolerance, will burst, causing a release of the $CO_2$ contained within the cylinder.

It is undisputed that for this 9 ounce $CO_2$ cylinder to have ruptured, two conditions must have existed. First, the $CO_2$ cylinder had to be filled above its 9 ounce capacity (i.e. it was overfilled). Second, the burst disk assembly had to fail to actuate when presented with an overfill situation. In this case, it is undisputed that the burst disk assembly failed to actuate due to the presence of two burst disks or membranes contained within the burst disk assembly.

While there is a vigorous dispute as to whether the second burst disk or membrane was present at the time of manufacture or whether it was intentionally added by Mr. Bates or at his request, there is no dispute that Mr. Bates was the last person to fill, or more accurately, overfill, the 9 ounce $CO_2$ cylinder prior to the rupture. Therefore, N.C. Gen. Stat. § 99B-4 and the common law concept of contributory negligence preclude Plaintiff's claims against the defendants, including the claims against BXD.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 8, 2014, Mr. Bates purchased two paintball marker kits from Dick's Sporting Goods, Inc. ("Dick's"). *See* Deposition of Douglas Stipanovich ("Stipanovich Dep.") at 94:7-95:4, attached hereto as Exhibit "A"; Doc. 15 at ¶ 11. One of the paintball marker kits included and Alpha Black Elite Paintball Marker and the 9 ounce cylinder at issue. *See id*. The cylinder was a Tippmann Sports, LLC ("Tippmann") branded cylinder. *See* Deposition of Dennis Tippmann ("Tippmann Dep.") at 113:20-114:15, attached hereto as Exhibit "B"; Doc. 15 at ¶ 11. The cylinder was manufactured by Gayston Corporation ("Gayston"). *See* Deposition of Andrew Sheldrick ("Sheldrick Dep.") at 20:7-20:18, attached hereto as Exhibit "C"; Doc. 15 at ¶ 11; Doc. 30 at ¶ 8. Gayston would purchase pin valve assemblies, including burst disk assemblies, from BXD, which purchased them from a Chinese manufacturer. *See* Sheldrick Dep. at 21:7-21:14; Deposition of Gail Selby ("Selby Dep.") at 38:20-38:25, attached hereto as Exhibit "D"; Doc. 30 at ¶ 11. Gayston would then assemble the pin valve assemblies into the cylinders. *See* Sheldrick Dep. at 20:19-21:3; Deposition of Holly Beck ("Beck Dep.") at 11:20-12:3, attached hereto as Exhibit "E."

The 9 ounce cylinder had warnings printed on its side. *See* photograph of cylinder, attached hereto as Exhibit "F." Included as warnings were the following:

DANGER

- IMPROPER USE, FILLING, STORAGE OR DISPOSAL OF THIS CYLINDER MAY RESULT IN DEATH, PERSONAL INJURY AND PROPERTY DAMAGE.

- THIS CYLINDER MUST BE FILLED ONLY BY PROPERLY TRAINED PERSONNEL IN ACCORDANCE WITH CGA PAMPHLETS P.1.C6, G-6.8, & AV-7.2 AVAILABLE FROM THE COMPRESSED GAS ASSOCIATION, 4221 WALNEY ROAD 5TH FLOOR, CHANTILLY, VIRGINIA 20151.

- DO NOT OVER PRESSURIZE….

Similarly, the owner's manual for the Alpha Black Elite Paintball Marker provided "SAFETY TIPS to ensure that your air or $CO_2$ cylinder is safe for play":

- Improper use, filing, storage, or disposal of air or $CO_2$ cylinder may result in property damage, serious personal injury or death.

- All air or $CO_2$ cylinders must be filled only by properly trained personnel.

- Do not overfill a cylinder! Never exceed the air or $CO_2$ cylinder's capacity.

*See* Alpha Black Elite Owner's Manual at p. 14, attached hereto as Exhibit "G."

From late 2014 until February 2015, Mr. Bates and his son, Zen Bates, would play paintball with a group of friends on the weekends at the property of Michael and Star Shipley. *See* Deposition of Michael Shipley ("Shipley Dep.") at 73:14-74:14, attached hereto as Exhibit "H." Initially, Mr. Bates and other members of the paintball playing group would have their $CO_2$ cylinders refilled at a Dick's store. *See* Shipley Dep. at 35:8-36:4. However, due to the cost, inconvenience and other factors associated with traveling to Dick's, the group decided to rent their own bulk $CO_2$ tank, which they stored in the garage of the Shipley home. *See id.*; Deposition of Shane Zollo ("Zollo Dep.") at

4

34:12-37:25, attached hereto as Exhibit "I." Other than possibly watching videos on YouTube, Mr. Bates received no training on how to fill the 9 ounce cylinder. *See* Shipley Dep. at 31:14-33:3. There is no indication that whatever YouTube videos Mr. Bates may or may not have seen consisted of training in accordance with any CGA pamphlets. *See* Shipley Dep. at 135:24-137:10; Zollo Dep. at 76:6-77:5.

On February 1, 2015, after playing paintball on the property of Michael and Star Shipley, Mr. Bates filled the 9 ounce cylinder in the garage of Michael and Star Shipley. *See* Plaintiff's Response to Defendant Tippmann Sports, LLC's First Set of Interrogatories to Plaintiff ("Plaintiff's Verified Interrogatory Responses") at ¶¶ 7, 8 & 9(b), attached hereto as Exhibit "J." The filling by Mr. Bates on February 1, 2015 was the last time the cylinder was filled prior to the rupture. *See id*. Plaintiff's lone liability expert agreed, the cylinder was filled above its capacity (i.e. it was overfilled) the last time it was filled prior to the rupture. *See* Deposition of Harri Kytomaa ("Kytomaa Dep.") at 123:20-124:2, attached hereto as Exhibit "K." Plaintiff's expert opined that the cylinder was filled between 11 and 13 ounces. *See id*. at 166:12-167:8.

During the evening of February 2, 2015, Mr. Bates was wrapping camouflage tape on the 9 ounce cylinder when the cylinder ruptured, which caused his death. *See* Doc. 15 at ¶ 16. Plaintiff's lone liability expert agreed that the cylinder would not have ruptured if the cylinder had not been overfilled. *See* Kytomaa Dep. at 127:10-129:7.

On or about December 2, 2016, Plaintiff, Hilda Bates, as Administrator of the Estate of Neman T. Bates ("Plaintiff") filed a complaint against Tippmann and Dick's. (Doc. 1-1). Those defendants removed the lawsuit to this Court. (Doc. 1). With regards

to Dick's, Plaintiff alleged Dick's was liable for negligence due to Dick's alleged "failure to safely fill" the 9 ounce cylinder. (Doc. 1-1 at ¶ 43-47).

On January 12, 2017, Plaintiff filed the First Amended Complaint. (Doc. 15). Again, with respect to Dick's, Plaintiff alleged it was liable for negligence due to its alleged "failure to safely fill" the 9 ounce cylinder. (Doc. 15 at ¶ 44-48). The First Amended Complaint, among other things, added Gayston as a defendant. (Doc. 15). Plaintiff alleged that Gayston was liable for the negligent design, manufacture and warnings. (Doc. 15 at ¶¶ 21-35). Additionally, Plaintiff alleged Gayston breached the implied warranties for merchantability and fitness for a particular purpose. (Doc. 15 at ¶¶ 36-43). In response, Gayston asserted, among other things, the affirmative defense of contributory negligence. (Doc. 23).

On June 13, 2017, Gayston filed a Third-Party Complaint against BXD, which alleged BXD was responsible for any damages obtained by Plaintiff. (Doc. 30). In response, BXD alleged Mr. Bates was contributorily negligent. (Doc. 40).

## QUESTION PRESENTED

1. Does the contributory negligence of Mr. Bates preclude Plaintiff's claims against defendants and BXD?

## ARGUMENT

### A. Mr. Bates' Contributory Negligence Precludes Claims Against BXD.

If Plaintiff's claims against Gayston are precluded by N.C. Gen. Stat. § 99B-4 and/or the common law concept of contributory negligence, no claims against BXD survive. *See Scott v. PPG Indus.*, 920 F.2d 927 (4th Cir. 1990) ("[i]t is manifest from the

6

language of [Rule 14(a)] that the third-party claim must be dependent on or related to the initial plaintiff's claim against the defendant…"); *Rhodes, Inc. v. Morrow*, 1997 U.S. Dist. LEXIS 15970 at * 6 (M.D.N.C. 1997) ("[a] fundamental princip[le] underlying Rule 14 is that the third-party defendant's liability to the third-party plaintiff must be derivative of or secondary to the third-party plaintiff's liability to the plaintiff."). Thus, as Mr. Bates was contributorily negligent, the defendants are entitled to summary judgment on Plaintiff's claims against them. Therefore, BXD is entitled to summary judgment on Gayston's derivative claims against it.

**B.    Mr. Bates Is Liable for Contributory Negligence as a Matter of Law.**

The facts on the issue of overfilling the 9 ounce cylinder are undisputed, thus summary judgment is appropriate. Plaintiff has admitted in verified responses to interrogatories that the 9 ounce cylinder was last filled by Mr. Bates the evening before the rupture. *See* Plaintiff's Verified Interrogatory Responses at ¶¶ 7, 8 & 9(b). Plaintiff's lone liability expert conceded that the 9 ounce cylinder was overfilled by between 22% and 44% before rupture. *See* Kytomaa Dep. at 123:20-124:2; 166:12-167:8. Moreover, Plaintiff's lone liability expert acknowledged that had the 9 ounce cylinder not been overfilled, the rupture, which led to Mr. Bates' death, would not have occurred. *See* Kytomaa Dep. at 127:10-129:7. Put simply, it is undisputed that Mr. Bates overfilled the cylinder, which was at least one of the proximate causes of the rupture of the cylinder and, ultimately, his death.

Clearly, Mr. Bates' actions constitute contributory negligence. As an initial matter, Plaintiff, by way of the allegation of negligence against Dick's in the Complaint

and First Amended Complaint, virtually admits that the failure to safely fill the 9 ounce cylinder renders one liable for negligence. *See* Doc. 1-1 at ¶¶ 43-47 & Doc. 15 at ¶¶ 44-48. Thus, Plaintiff should be estopped from disputing whether Mr. Bates was negligent when he failed to safely fill the 9 ounce cylinder. *See Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996); *John S. Clark Co. v. Fabbert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir. 1995); *Gore v. Myrtle/Mueller*, 362 N.C. 27, 33, 653 S.E.2d 400, 405 (2007) (in order to protect the essential integrity of the judicial process, the doctrine of estoppel precludes a party from adopting a position that is inconsistent with a stance taken in litigation).

Moreover, even if Plaintiff's position in the pleadings is not sufficient, North Carolina common law and statutory law make clear that Plaintiff is barred from recovery in this case. As a matter of common law, Mr. Bates is liable for contributory negligence based on his act of overfilling the cylinder. *See Price v. Miller*, 271 N.C. 690, 696 157 S.E.2d 347, 351 (1967) (contributory negligence as a matter of law exists when a plaintiff's negligence is "one of the proximate causes" of the injury); *U.S. Industries, Inc. v. Tharpe*, 47 N.C. App. 754, 762, 268 S.E.2d 824, 829 (1980) (a plaintiff is barred from recovery when plaintiff's own negligence contributed to "at least one of the proximate causes" of the incident); *Culler v. Hamlett*, 148 N.C. App. 372, 377, 559 S.E.2d 195, 199 (2002) (Court held plaintiff was contributorily negligent as a matter of law when the plaintiff's own negligence was "at least one proximate cause" of the plaintiff's injuries).

Further, the statutory scheme in North Carolina precludes recovery by Plaintiff. N.C. Gen. Stat. § 99B-4 provides that no manufacturer or seller shall be held liable in any product liability action if:

> (1)   The use of the product giving rise to the product liability action was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping, if the user knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings; or
>
> …
>
> (3)   The claimant failed to exercise reasonable care under the circumstances in the use of the product, and such failure was a proximate cause of the occurrence that caused the injury or damaged complained of.

N.C. Gen. Stat. § 99B-4(1) and (3) is the statutory codification of contributory negligence.  *See Nicholson v. American Safety Util. Corp.*, 346 N.C. 767, 772, 488 S.E.2d 240, 243 (1997); *Champs Convenience Stores v. United Chem. Co.*, 329 N.C. 446, 453-454, 406 S.E.2d 856, 860 (1991).  "In a product liability action founded on negligence, 'there is no doubt that…[plaintiff's] contributory negligence will bar his recover to the same extent as in any other negligence case.'"  *Nicholson*, 346 N.C. at 773, 488 S.E.2d at 244 *quoting Smith v. Fiber Controls Corp.*, 300 N.C. 669, 672, 268 S.E.2d 504, 506 (1980).    Additionally, "contributory negligence also bars a products liability claim against a manufacturer or seller based on breach of implied warranty."  *Id. citing Gillespie v. American Motors Corp.*, 69 N.C. App. 531, 317 S.E.2d 32 (1984).

9

Thus, N.C. Gen. Stat. § 99B-4 and/or the common law doctrine of contributory negligence preclude Plaintiff from prevailing on the claims asserted against Gayston (and, by extension, BXD) for negligent design, manufacture and warnings, as well as claims for breach of the implied warranties for merchantability and fitness for a particular purpose.

In *Lee v. Crest Chemical Co.*, 583 F. Supp. 131 (M.D.N.C. 1984), the defendant was granted summary judgment in a products liability action complaining of negligent warnings and breaches of implied warranties. The case involved a rust stain remover. The instructions on the label provided that the user should "wear rubber gloves" and "avoid contact with skin" as the cleaner "will cause burns that are not immediately painful." *Id.* at 132-133. The plaintiff suffered severe injuries after getting a few drops of the rust stain remover on her hands because she was not wearing rubber gloves. *Id.* at 133.

The defendant asserted that the plaintiff's failure to wear rubber gloves was a compete defense under N.C. Gen. Stat. § 99B-4(1). It was undisputed that the plaintiff would not have suffered chemical burns "*but for* her failure to follow instructions concerning a safety precaution." *Id.* at 135 (emphasis in original). The Court noted that the plaintiff's failure to following the instructions "was the proximate cause of the very injury she suffered. If followed, the instruction was adequate to protect injury to [the plaintiff's] hand." *Id.*

Similarly, here, Mr. Bates' failure to follow the instructions concerning safety precautions on the 9 ounce cylinder was the proximate cause of Mr. Bates' death.

Plaintiff's own expert admits that but for Mr. Bates overfilling the 9 ounce cylinder, the cylinder would not have ruptured. *See* Kytomaa Dep. at 127:10-129:7. The 9 ounce cylinder and the owner's manual for the marker clearly provide that "improper…filing…of this cylinder may result in death…." The 9 ounce cylinder and the owner's manual for the marker clearly provide that it must be filled "only by properly trained personnel." Finally, the 9 ounce cylinder clearly provides that the user should not "over pressurize" the cylinder and the owner's manual for the marker clearly provides that the owner should not "overfill a cylinder!" and should "[n]ever exceed the air or $CO_2$ cylinder's capacity." If Mr. Bates had followed those instructions and not improperly filled (i.e. overfilled or over pressurized) the cylinder, the rupture would not have occurred. Thus, defendants are entitled to summary judgment under N.C. Gen. Stat. § 99B-4(1).

For the same reasons noted above, defendants are entitled to summary judgment under N.C. Gen. Stat. § 99B-4(3) as Mr. Bates failed to exercise reasonable care under the circumstances when he overfilled the 9 ounce cylinder.

## CONCLUSION

For the reasons stated herein, BXD respectfully requests that the Court grant summary judgment on all of Plaintiff's claims against Gayston, and, by extension, all of the claims asserted against BXD.

This the 30th day of October, 2018.

    /s/ Jeffrey B. Kuykendal           
JEFFREY B. KUYKENDAL
Bar No: 37693
Attorney for BXD, Enterprises, Inc.
McAngus Goudelock & Courie, PLLC
Post Office Box 30307
Charlotte, North Carolina 28230
(704) 643-6303
jeffrey.kuykendal@mgclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the above date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jonathan R. Friedman
Weinberg Wheeler Hudgins Gunn & Dial
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Attorney for Tippmann Sports, LLC

Mel J. Garofalo
Hedrick Gardner Kincheloe & Garofalo, LLP
Post Office Box 30397
Charlotte, North Carolina 28230
Attorney for Dick's Sporting Goods, Inc.

Marc J. Meister
Marc J. Meister, PLLC
14 Myrtle Bank Road
Hilton Head Island, South Carolina 29926
Attorney for Gayston Corporation

Martin L. Brackett, Jr.
Pearlynn G. Houck
Robinson Bradshaw & Hinson, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Attorney for Hilda Bates

/s/ Jeffrey B. Kuykendal
Jeffrey B. Kuykendal

13