IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16CV875

| | |
|---|---|
| HILDA BATES, as Administrator of the Estate of Neman T. Bates, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TIPPMANN SPORTS, LLC, and GAYSTON CORPORATION, )<br>)<br>Defendants, )<br>)<br>And )<br>)<br>GAYSTON CORPORATION, )<br>)<br>Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>BDX, ENTERPRISES, INC., )<br>)<br>Third-Party Defendant. )<br>_____) | ORDER |

This matter is before the Court upon motions of the Defendants and the Third-Party Defendant for Summary Judgment. These motions are fully briefed and this matter is ripe for disposition.

I.  **FACTUAL BACKGROUND**

This is a products liability action arising from the death of Newman Bates ("Mr. Bates"). Around Christmas of 2014 Mr. Bates purchased paintball marker kits at Dick's Sporting Goods ("DSG") for himself and his 10-year-old son. One of the kits contained a 9 oz. $CO_2$ canister. The canister was sold by Defendant Tippmann Sports, LLC ("Tippmann") and was designed,

1

manufactured, and assembled by Defendant Gayston Corporation ("Gayston"). The canister was equipped with a pressure relief device ("PRD") designed to release the CO2 inside the canister if it ever exceeded 3000 psi. The service pressure of the canister was 1800 psi, and it was rated to rupture at 4500 psi. The pin valve of the canister, including its PRD, was sold to Gayston by Third-Party Defendant, BXD, Enterprises, Inc. ("BXD"). It is undisputed that the PRD at issue contained two "burst disks"[1] instead of one.[2] This rendered the PRD defective, causing it to fail to activate when the pressure in Mr. Bates' canister rose. The cylinder itself was not defective.

When Mr. Bates and his group of friends began playing paintball, they had their CO2 canisters filled at DSG in Gastonia, North Carolina, a 30-minute drive from Mike Shipley's house, where the group played paintball. At some point, members of the group began to consider whether they could fill their own canisters. The canisters, including the one at issue herein, contained the following warning on the label affixed to the cylinder:

> IMPROPER USE, FILLING, STORAGE OR DISPOSAL OF THIS CYLINDER MAY RESULT IN DEATH, PERSONAL INJURY AND PROPERTY DAMAGE.
> THIS CYLINDER MUST BE FILLED ONLY BY PROPERLY TRAINED PERSONNAL IN ACCORDANCE WITH CGA PAMPLETS P.1.C6, G-6.8, & AV-7.2 AVAILABLE FROM THE COMPRESSED GAS ASSOCIATION, 4221 WALNEY ROAD 5th FLOOR, CHANTILLY, VIRGINIA 20151.
> DO NOT OVER PRESSURIZE. . . .

The Owner's Manual that accompanied the marker kit contained a similar warning.

After some research, the group learned that there is no certification or license that qualifies someone as a "trained personnel" capable of filling a CO2 canister. Mr. Bates and his friend group began researching how to safely fill a CO2 canister. One of the members of the group rented a bulk CO2 tank from a welding supply store so the group could refill their CO2

---

[1] A "burst disk" is a thin copper disk that is designed to rupture if the pressure in the canister becomes too high.
[2] There is a dispute as to whether the second burst disk was present at the time of manufacture.

canisters at a lesser cost without traveling to a store. They stored the rented tank inside Mr. Shipley's garage. Shipley purchased a fill station and scale so that the group could transfer CO2 from the bulk tank to their personal CO2 canisters. The group reviewed fill instructions available online, watched several videos demonstrating the process, and watched a DSG employee fill a canister. Mr. Bates personally reviewed the videos and available instructions, just like the rest of the group. He read the included Owner's Manual. He asked questions and learned about the fill process from an employee at a paintball field and gear store. Prior to filling his first canister, he received personal instruction from Shipley, who by that time had filled several canisters.

On February 1, 2015, Mr. Bates played paintball with his friends and refilled his canisters, including the one at issue herein, in Mr. Shipley's garage after the games ended. There is no dispute that the canister at issue was filled above its capacity. On February 2, 2015, Mr. Bates was in his kitchen wrapping the exterior of the CO2 canister with camouflage tape when it exploded. Mr. Bates was taken by ambulance to the hospital where he was pronounced dead upon arrival from massive internal trauma to the chest and neck as a result of the canister explosion.

Plaintiff Hilda Bates filed this lawsuit naming Tippmann and Gayston[3] as Defendants and alleging claims of negligent design, negligent manufacture, negligent failure to warn or instruct, and breach of implied warranties. Gayston filed a Third-Party Complaint against BDX seeking indemnification if it is found that BDX sold a negligently manufactured valve and PRD to Gayston. All three Defendants have now moved for summary judgment, arguing that Mr. Bates was contributorily negligent, thus barring Plaintiff's claims.

---

[3] Plaintiff originally sued DSG as well but subsequently dismissed DSG from the case.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.*

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Instead, "the non-moving party must present sufficient evidence such that 'reasonable jurors could find by a preponderance of the evidence' for the non-movant." *Sylvia Dev. Corp. v. Calvert Cnty., Md.,* 48 F.3d 810, 818 (4th Cir. 1995) (citing *Anderson,* 477 U.S. at 252 (1986)).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In the end, the question posed by a

summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

### B. Contributory Negligence

North Carolina's product liability statute provides in relevant part:

No manufacturer or seller shall be held liable in any product liability action if:
(1) The use of the product giving rise to the product liability action was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping, if the user knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings; or
\*\*\*
(3) The claimant failed to exercise reasonable care under the circumstances in the use of the product, and such failure was a proximate cause of the occurrence that caused the injury or damage complained of.

N.C. Gen. Stat § 99B-4. These provisions "merely codify the common law doctrine of contributory negligence as it applies in products liability actions." *Nicholson v. American Safety Util. Corp.,* 488 S.E.2d 240, 243 (N.C. 1997).

A contributory negligence defense requires: (1) that the plaintiff failed to exercise due care for his own safety and (2) that failure was a proximate cause of plaintiff's injuries. *See Champs Convenience Stores, Inc. v. United Chem. Co.*, 406 S.E.2d 856, 861 (N.C. 1991); *Bass v. Alvarado*, 713 S.E.2d 251 (N.C. Ct. App. 2011). "[I]f plaintiff's own negligence is one proximate cause of [his] own injury, [he] is precluded from recovery irrespective of the acts of others." *Culler v. Hamlett*, 559 S.E.2d 195, 200 (N.C. Ct. App. 2002).

The Supreme Court of North Carolina has repeatedly instructed that contributory negligence is almost always a jury question. *See Nicholson*, 488 S.E.2d at 244 ("Issues of contributory negligence . . . are ordinarily questions for the jury and are rarely appropriate for summary judgment."); *Champs*, 406 S.E.2d at 862 ("The issue of contributory negligence is ordinarily a question for the jury rather than an issue to be decided as a matter of law."); *Taylor*

*v. Walker*, 360 S.E.2d 796, 799 (N.C. 1987) (describing the "particularly significant," "heavy burden" for a movant asserting a contributory negligence defense, and urging "greater judicial caution" because "issues arising in negligence cases are ordinarily not susceptible of summary adjudication"); *City of Thomasville v. Lease-Afex, Inc.*, 268 S.E.2d 190, 195–96 (N.C. 1980) ("[S]ummary judgment for contributory negligence is rarely granted."). This is because the elements of a contributory negligence defense are "within the peculiar expertise of the fact finders." *Smith v. Selco Products, Inc.*, 385 S.E.2d 173, 175 (N.C. Ct. App. 1989); *see also Taylor*, 360 S.E.2d at 799 (noting that "application of the prudent man test, or any other applicable standard of care, is generally for the jury"). Thus, to find contributory negligence as a matter of law, the evidence "must so clearly establish that the plaintiff was negligent that no other reasonable inference or conclusion could be drawn." *Corns v. Hall*, 435 S.E.2d 88, 91 (N.C. Ct. App. 1993) (citing *Wells v. Johnson*, 152 S.E.2d 229, 232 (N.C. 1967)).

In the products liability context "[a] plaintiff is contributorily negligent when he fails to exercise such care as an ordinarily prudent person would exercise under the circumstances in order to avoid injury." *Nicholson*, 488 S.E.2d at 244. At summary judgment, the issue is not whether a plaintiff "chose the best or wisest alternative," but simply "whether there is evidence that, if believed, would support an inference that he acted reasonably." *Taylor*, 360 S.E.2d at 800.

Defendants argue that Mr. Bates was contributorily negligent as a matter of law because he failed to follow the warnings on the label of the CO2 canister and in the Owners Manual. In support of their argument, Defendants cite the case of *Lee v. Crest Chem. Co.*, 583 F. Supp. 131 (M.D.N.C. 1984), where the plaintiff suffered chemical burns on her hands after using a stain remover without wearing rubber gloves. The stain remover contained numerous specific

6

warnings instructing the user to wear rubber gloves, avoid contact with the skin, and to seek medical attention immediately if contact with the skin occurred. Despite these specific warnings, the plaintiff failed to wear rubber gloves and failed to seek immediate medical attention. The court found her contributorily negligent as a matter of law. *Id.* at 135.

However, a failure to follow warnings or instructions does not automatically render one contributorily negligent under North Carolina law. The warnings must be deemed "adequate." *See* N.C. Gen. Stat. § 99B-4(1) (establishing a bar to recovery in product liability action if use "was contrary to any express and *adequate* instructions or warnings") (emphasis added). For example, in *Champs*, a grocery store operator sued a chemical company after the chemical company delivered a toxic chemical instead of a dust control product that the grocer ordered. The chemical company argued that the store's employee was contributorily negligent as a matter of law because she used the toxic chemical without reading or following the information contained on its label, and she admitted that if she had read the label she would not have applied the toxic chemical. The Supreme Court of North Carolina held that the employee was not contributorily negligent as a matter of law. The Court explained that "if the instructions themselves were not adequate or if the plaintiff did not read the instructions but the jury determined that plaintiff still exercised reasonable care, the jury should not find contributory negligence on the part of plaintiff." *Champs*, 406 S.E.2d at 860–61.

Likewise, in *Smith*, a worker sued a cardboard box baler manufacturer after his arm was torn off while operating the baler. The baler manufacturer obtained summary judgment on its argument that the plaintiff was contributorily negligent as a matter of law because he reached his hand into the baler while it was operating, despite an explicit warning decal on the machine not to do so. The North Carolina Court of Appeals reversed, holding that the plaintiff's violation of

7

the warning did not establish contributory negligence as a matter of law because there was an issue as to whether a latent hazard in the baler rendered the warning inadequate. The court reasoned that the baler had a safety tapeswitch that was designed to stop the machine automatically when it came into contact with a person's body (much like an elevator door), and that "[r]eaching into the bale chamber . . . was clearly the custom among" plaintiff's coworkers. *Smith*, 385 S.E.2d at 177. The baler had a latent defect which caused its safety tapeswitch device to malfunction. Compounding the problem, the baler's design did not include a mechanism to warn workers when the tapeswitch sensor was not operating. The workers relied on the tapeswitch sensor to protect them. All of these facts raised questions as to whether the warning sticker on the baler was adequate.

As the *Smith* case also demonstrates, North Carolina courts have considered evidence of custom or common practice when evaluating a plaintiff's due care or lack thereof. For example, in *Morgan v. Cavalier Acquisition Corp.*, 432 S.E.2d 915 (N.C. Ct. App. 1993), the estate of a high school student sued a vending machine manufacturer and bottling company after the student was killed when a vending machine fell on him. The defendants argued that the student was contributorily negligent as a matter of law because plaintiff's own expert testified that "it was close to inconceivable that the machine could have fallen without some deliberate voluntary act to tip the machine." *Morgan*, 432 S.E.2d at 922. The appellate court again reversed the grant of summary judgment in favor of defendants. It held that the defendants did not show as a matter of law that the student failed to exercise reasonable care under the circumstances when "[s]everal students, contemporaries of decedent, testified that it was well known that if the . . . machine at issue was tilted, a canned drink would be dispensed." *Id.*

While there is a dispute as to whether it could be considered a "common practice" as argued by the Plaintiff, Plaintiff has produced some evidence that paintball players have been known to fill their own canisters with CO2. Defendant Tippmann even admitted that it was aware that paintball players fill their own canisters. Moreover, as in *Smith*, there is evidence of a latent hazard in the canister, that is, the presence of a second burst disk, from which a jury could find that the warning on the canister was rendered inadequate.

Defendants also argue that the fact that Mr. Bates overfilled his canister conclusively establishes his negligence. However, Plaintiff has introduced evidence that CO2 canisters are commonly overfilled, even when one follows the CGA standards, and Tippmann admitted that it is "not hard" to overfill a CO2 canister. Moreover, the record shows numerous instances of DSG employees overfilling canisters resulting in the activation of the PRD, despite their training and documented procedures. In fact, the foreseeability of overfilling is precisely why canisters must have a functional PRD. Based upon Plaintiff's evidence, a reasonable jury could conclude that Mr. Bates exercised due care in filling the CO2 canister, even though it was overfilled.

The Court also finds that Defendants have failed to establish as a matter of law that any alleged negligence by Mr. Bates proximately caused his death. Proximate causation is an essential element of a contributory negligence defense, and is defined as:

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Hairston v. Alexander Tank & Equip. Co.*, 311 S.E.2d 559, 565 (N.C. 1984) (citations omitted). In other words, "[t]here is a two-pronged formula for proximate cause, which consists of a cause-

9

in-fact and reasonable foreseeability." *Hawkins v. Emergency Med. Physicians of Craven Cty., PLLC*, 770 S.E.2d 159, 165 (N.C. Ct. App. 2015).

Reasonable foreseeability requires showing that an injury was more than "merely possible." *Pope v. Bridge Broom, Inc.*, 770 S.E.2d 702, 713 (N.C. Ct. App. 2015). Some injury must have been *probable* under the circumstances. *See Hairston*, 311 S.E.2d at 565. "Proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case." *Williams v. Carolina Power & Light Co.*, 250 S.E.2d 255, 258 (N.C. 1979) (citation omitted). "[I]t is only in exceptional cases, in which reasonable minds cannot differ as to foreseeability of injury, that a court should decide proximate cause as a matter of law." *Hale v. Duke Power Co.*, 252 S.E.2d 265, 268 (N.C. Ct. App.1979) (citation omitted).

Defendants have not shown that the explosion—or any injury—was a reasonably foreseeable result of overfilling the canister. By design, the burst disk should have ruptured, safely releasing the pressure from the canister. The expert witnesses tendered by both Plaintiff and Defendants have testified that the purpose of the burst disk was to act as a safety against over-pressurization, and that the explosion of the canister would not have occurred if the PRD had contained only one burst disk instead of two. A reasonable jury could conclude that Mr. Bates could not have known that the PRD contained two burst disks, and therefore could not have reasonably foreseen that the probable result of overfilling the canister was the explosion and his death.

In light of the above-cited North Carolina cases as well as the strong precedent disfavoring summary judgment on issues of contributory negligence the Court declines to find that "the evidence is so clear that no other conclusion is possible." *See Smith*, 385 S.E. 2d at 175.

A reasonable jury could determine that Mr. Bates exercised reasonable care under the circumstances and that there was a latent defect in the canister that was the proximate cause of Mr. Bates' death.

IT IS THEREFORE ORDERED that the Defendants' and Third-Party Defendant's Motions for Summary Judgment are hereby DENIED.

Signed: April 9, 2019

Graham C. Mullen
United States District Judge